## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

In re:                                        Chapter 13

PATRICIA RENCHLER                             Case No. 09-10407-RLJ-13
     Debtor(s).

### AFFIDAVIT SUPPORTING MOTION FOR RELIEF FROM AUTOMATIC STAY

STATE OF __T E X A S__    )
                           ) ss.
COUNTY OF __D A L L A S__    )

      Before me, the undersigned authority, personally appeared the person identified below, who being by me duly sworn, deposed as follows:

1. My name is __Antonio Guerrera__. I am of sound mind, lawful age and capable of making this Affidavit. The statements set forth in this Affidavit are true and correct based on my personal knowledge and review of the business records described herein. I am authorized to make this Affidavit on behalf of CitiMortgage, Inc.

2. This Affidavit is submitted in support of the motion seeking relief from the automatic stay (the "Motion") by CitiMortgage, Inc., its Successors and/or Assigns ("Movant"), in the above-captioned case.

3. I am employed by CitiMortgage, Inc. as a Vice President-Document Control. In that capacity, I am familiar with the books of account and have examined all books, records, and documents kept concerning the transaction alleged in the Motion. All of these books, records, and documents are kept in the regular course of business and are made at or near the time of the transaction using information transmitted by persons with personal knowledge of the facts. It is the regular practice to make and keep these books, records and documents. All of these books, records, and documents are managed by employees or agents whose duty it is to keep the books, records, and documents accurately and completely.

4. My responsibilities include, but are not limited to, handling bankruptcy accounts and ascertaining amounts due and payable.

5. I have personal knowledge of the facts contained in this Affidavit. Specifically, I have reviewed and have personal knowledge of the records related to the loan account associated with the certain property described as 5461 County Road 206, Breckenridge, Texas 76424.

6. Movant is the current holder of the note as Movant's records reflect that Movant is in possession of the original note. A true and correct copy of the note is attached hereto as Exhibit A, and incorporated herein by reference.

7. Movant is the current holder of the Deed of Trust. A true and correct copy of the Deed of Trust is attached hereto as Exhibit B and incorporated herein by reference. The Deed of Trust was assigned and transferred to Movant. A true and correct copy of the assignment of the Deed of Trust is attached hereto as Exhibit C and incorporated herein by reference.

8. As of 03/07/2014, there are one or more defaults in paying Debtor(s) post-petition amounts due with respect to the note.

9. As of the date hereof, the principal balance owed by the Debtor(s) to CitiMortgage, Inc. is $57,927.92, plus advances made, attorney fees, costs, other fees and charges, and interest accruing thereon in accordance with the loan documents.

10. The following chart sets forth those postpetition payments, due pursuant to the terms of the note, that have been missed by the Debtor(s) as of 03/07/2014:

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 3 | 01/01/2014 | 03/01/2014 | $397.08 | $297.81 | $694.89 | $2,084.67 |
| Less postpetition partial payments (suspense balance): | | | | | | ($86.35) |

Total:    $1,998.32

11. As of 03/07/2014, the total postpetition arrearage/delinquency is $1,998.32, consisting of (i) the foregoing total of missed postpetition payments in the amount of $1,998.32, plus (ii) the following postpetition fees[1]:

| Description | Amount |
|---|---|
| N/A | $0.00 |
| N/A | $0.00 |

12. An additional payment will come due on April 1, 2014, and on the 1st day of each month thereafter until the loan is paid in full.

13. Attached as Exhibit D is a true and correct copy of the post-petition arrearage accounting reflecting all payments, credits, and other fees and costs with respect to the loan described above.

I solemnly affirm under the penalty of perjury and upon personal knowledge that the contents of the foregoing paper are true.

Affiant

_Antonio Guerrero_

Printed Name: _Antonio Guerrero_

Title: Vice President-Document Control

Date: _March 13, 2014_

STATE OF _Texas_ )
                   ) ss.
COUNTY OF _Dallas_ )

On this _13_ day of _March_, 20_14_, before the undersigned Notary Public in and for the state of _Texas_, personally appeared _Antonio Guerrero_, known to me to be the person who executed the Affidavit on behalf of the above-named Movant, and acknowledged to me that he/she executed the same for the purposes therein stated.

_Alta R. Arnett_
Notary Public
My commission expires: _3/4/17_

ALTA R ARNETT
My Commission Expires
March 4, 2017

¹The total of missed post petition payments for this escrow loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, post petition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, movant will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total post petition arrearage/delinquency is qualified accordingly.

# EXHIBIT A

RENCALER
Loan Number
Case Number
MIN

# NOTE

**DECEMBER 4, 2006**
[Date]

**5461 COUNTY ROAD 206, BRECKENRIDGE, TEXAS 76424-7046**
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **COUNTRYWIDE HOME LOANS, INC.** and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **SIXTY-FOUR THOUSAND FOUR HUNDRED NINETY AND 00/100ths** Dollars (U.S. **$64,490.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **SIX AND ONE-QUARTER** percent (**6.2500%**) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the 1ST day of each month beginning on **JANUARY 1, 2007**. Any principal and interest remaining on the 1ST day of **DECEMBER, 2036**, will be due on that date, which is called the maturity date.

### (B) Place

Payment shall be made at **POST OFFICE BOX 660694, DALLAS, TEXAS 75266-0694** or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$397.08**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge ☐ Other [Specify]

☐ Growing Equity Allonge

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent (**4.00%**) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

FHA Multistate Fixed Rate Note - 6/96

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
PATRICIA RENCHLER                    -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE TO
CitiMortgage, Inc.
BY: _____
WILLIAM S. FELTS, Vice President
CitiMortgage, Inc.

PAY TO THE ORDER OF

CitiMortgage, Inc.

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS INC.

_____
Marie C. Haghounian
Assistant Secretary

# EXHIBIT B

vol. **1860** page **78**

3467



When Recorded Mail To:
COUNTRYWIDE HOME LOANS, INC.
POST OFFICE BOX 10423
MS SV-79 DOCUMENT PROCESSING
VAN NUYS, CALIFORNIA 91410-0423

Escrow/Closing #
Doc ID #
Case Number
MIN

——————————— [Space Above This Line For Recording Data] ———————————
## DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on DECEMBER 4, 2006. The Grantor is PATRICIA RENCHLER ( A SINGLE WOMAN ("Borrower"). The trustee is G. TOMMY BASTIAN, whose address is 15000 SURVEYOR BOULEVARD, ADDISON, TEXAS 75001 ("Trustee"). The beneficiary is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") (SOLELY AS NOMINEE FOR LENDER, AS HEREINAFTER DEFINED, AND LENDER'S SUCCESSORS AND ASSIGNS). MERS IS ORGANIZED AND EXISTING UNDER THE LAWS OF DELAWARE, AND HAS AN ADDRESS AND TELEPHONE NUMBER OF POST OFFICE BOX 2026, FLINT, MICHIGAN 48501-2026, TELEPHONE (888)679-MERS. COUNTRYWIDE HOME LOANS, INC., a corporation organized and existing under the laws of THE STATE OF NEW YORK, and whose address is 4500 PARK GRANADA, MSN # SVB-314, CALABASAS, CALIFORNIA 91302-1613 ("Lender"). Borrower owes Lender the principal sum of SIXTY-FOUR THOUSAND FOUR HUNDRED NINETY AND 00/100ths Dollars (U.S. $64,490.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on DECEMBER 1, 2036. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in STEPHENS County, Texas:
SURFACE OF LOTS 27, AND 28, BLOCK 5, LAKERIDGE HEIGHTS SUBDIVISION OUT OF
TE&L COMPANY SURVEY NO. 1502 IN STEPHENS COUNTY, TEXAS AS SHOWN ON THE MAP
OR PLAT OF SAID SUBDIVISION OF RECORD IN THE OFFICE OF THE COUNTY CLERK OF
STEPHENS COUNTY, TEXAS.
Parcel ID Number: R12158

Page 1 of 7
GV2003-1.NEW

FHA Texas Deed of Trust - 6/96

VOL **1860** PAGE **79**

which has the address of    5461 COUNTY ROAD 206, BRECKENRIDGE,
                                                    [Street]                                                [City]
Texas              76424-7046         ("Property Address");
                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

VOL 1860 PAGE 80

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

VOL 1860 PAGE 81

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within sixty (60) days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to sixty (60) days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

Page 4 of 7

GV2003-4.NEW

FHA Texas Deed of Trust - 6/96

VOL **1860** PAGE **82**

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

Page 5 of 7
GV2003-5 .NEW

FHA Texas Deed of Trust - 6/96

VOL 1860 PAGE 83

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts acquired by Lender by assignment or are released by the holder thereof upon payment.

22. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

Page 6 of 7
GV2003-6.NEW

FHA Texas Deed of Trust - 6/96

VOL 1860 PAGE 84

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.[Check applicable box(es)]

☐ Condominium Rider       ☐ Growing Equity Rider

☐ Planned Unit Development Rider       ☐ Graduated Payment Rider

☒ Other(s)
    [specify] - Tax Exempt Financing Rider

**24. Purchase Money; Vendor's Lien; Renewal and Extension.** [Complete as appropriate]

Vendor's Lien: The Note secured hereby is primarily secured by the Vendor's Lien retained in the Deed of even date herewith conveying the Property to Borrower, which Vendor's Lien has been assigned to Lender, this Deed of Trust being additional security therefore.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

......................................................(Seal)      ......................................................(Seal)
PATRICIA RENCHLER       -Borrower                      -Borrower

......................................................(Seal)      ......................................................(Seal)
      -Borrower                      -Borrower

......................................................(Seal)      ......................................................(Seal)
      -Borrower                      -Borrower

———————— [Space Below This Line For Acknowledgment] ————————

STATE OF TEXAS, STEPHENS ........................................ COUNTY ss:

This instrument was acknowledged before me this 4th day of December 20 06 , by PATRICIA RENCHLER .

My Commission Expires:                                               
(Signature of Officer)
(Title of Officer)

CHERYL HUNYARD
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 02-16-2007

VOL **1860** PAGE **85**

Escrow/Closing #
Doc ID #
Case Number
MIN

## EXHIBIT C
## TAX-EXEMPT FINANCING RIDER
### (MUST BE ATTACHED TO ALL MORTGAGES)

THIS TAX-EXEMPT FINANCING RIDER is made this 4TH day of DECEMBER, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to COUNTRYWIDE HOME LOANS, INC. ("Lender") of the same date and covering the Property described in the Security Instrument and located at: 5461 COUNTY ROAD 206, BRECKENRIDGE, TEXAS 76424-7046 (Property Address).

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Lender, or such of its successors or assigns as may by separate instrument assume responsibility for assuring compliance by the Borrower with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if:

a.  All or part of the property is sold or otherwise transferred (other than by devise, descent or operation of law) by Mortgagor to a purchaser or other transferee: i. Who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Sections 143(c) and (i)(2) of the Internal Revenue Code; or ii. Who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Sections 143(d) and (i)(2) of the Internal Revenue Code (except that the language "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143(d)(1)); or iii. At an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 % for Targeted Area residences), all as provided in Sections 143(e) and (i)(2) of the Internal Revenue Code; or iv. Who has a gross income in excess of applicable median family income as provided in Sections 143(f) and (i)(2) of the Internal Revenue Code; or

b.  Mortgagor fails to occupy the property described in the mortgage without prior written consent of the Mortgagee or its successors or assigns described at the beginning of this Tax-Exempt Financing Rider; or

c.  Mortgagor omits or misrepresents a fact that is material with respect to the provisions of Section 143 of the Internal Revenue Code in an application for this mortgage; or

VOL 1860 PAGE 86

d. All or any part of the property securing the Mortgage (the "Property") or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent.

Borrower may transfer all or part of the property securing the Mortgage if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in the Mortgage is acceptable to Lender under its customary underwriting standards.

References are to the 1986 Internal Revenue Code, as amended and in effect on the date of execution of the mortgage and are deemed to include the implementing regulations. By signing below the Mortgagor accepts and agrees to the terms and conditions of the Tax-Exempt Financing Rider to the Security Instrument.

_Patricia Rencher_ / _12-04-06_
PATRICIA RENCHER            Date

_____ Date

_____ Date

_____ Date

Page 2 of 2

**FILED FOR RECORD**

AT 10:50 O'CLOCK A M

ON THE 6 DAY OF December

A.D., 2006

COUNTY CLERK, STEPHENS CO., TEXAS

BY _____ DEPUTY

**STATE OF TEXAS**
**COUNTY OF STEPHENS**

I hereby certify that this instrument was Filed on the date and at the time stamped hereon by me and was duly RECORDED in the Volume and Page of the Official Public Records of Stephens County, Texas.

County Clerk, Stephens County, Texas

VOL. 1860    PAGE 78-87

RECORDED 12-7-2006

VOL. 1860 PAGE 87

3467

# EXHIBIT C

00000063 Pages: 1 OPR Vol:1967 P: 597
Filed 01/12/2010 09:07:17 AM    By: joanieg
66
                dock - Stephens, TX County Clerk

PREPARED BY AND RETURN TO:
M. E. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092

**Assignment of Mortgage**                 Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")
SOLELY AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. C4318 Miller Road, Flint, MI 48507 (Assignor) by
these presents does assign, and set over, without recourse, to CITIMORTGAGE, INC. 4050 Regent Blvd., Mail Stop N2A-222,
Irving, TX 75063 (Assignee) the described mortgage, together with certain note(s) described with all interest, all liens, any rights due
or to become due thereon, executed by PATRICIA RENCHLER, A SINGLE WOMAN to MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. ('MERS') SOLELY AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.   Said
mortgage Dated: 12/4/2006 is recorded in the State of TX, County of Stephens on 12/7/2006, as Volume 1860 Page 78 AMOUNT:
$ 64,490.00   Property Address: 5461 COUNTY ROAD 206, BRECKENRIDGE, TX 76424-7046
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer
Executed on: January 11, 2010
       MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR
       COUNTRYWIDE HOME LOANS, INC.

By: _____

M. Mathews, Vice President



RENCHLER  MAS

State of Texas, County of Tarrant
On 1/11/2010, before me, the undersigned, personally appeared M. Mathews, who acknowledged that he/she is Vice President of/for
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR COUNTRYWIDE
HOME LOANS, INC. and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR COUNTRYWIDE
HOME LOANS, INC.   GIVEN UNDER MY HAND AND SEAL OF OFFICE this 1/11/2010.

JULIE BACON
Notary Public, State of Texas
My Commission Expires
November 30, 2010

Notary public, Julie Bacon
My Commission Expires  November 30, 2010

                                MIN                         MERS Phone 888-679-6377
TX  Stephens                                                CMI/BKRUPTCY/ASN

# EXHIBIT D

**Debtor Name:** PATRICIA RENCHLER
**Case No:**
**Account No:**

| Date Recd | Code Legend | Amount Received Reviewed | Amount applied from Suspense | Trustee Payment | Principal | Interest | Escrow | Late charges | Other Fees | Suspense | Contractual POTD | Post POTD | Trustee Check No | Out standing PB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | BK FILED DATE | | | | | POC filed for $0.00 | | | | | | | | |
| 10/29/09 | Debtor Payment Received and applied | $649.62 | $649.62 | | $73.55 | $323.53 | $252.54 | | | $0.00 | 11/01/09 | 11/01/09 | | $62,043.47 |
| 10/29/09 | Debtor Payment Received and applied | $0.38 | $0.38 | | $0.38 | | | | | $0.00 | | | | $62,043.09 |
| 11/27/09 | Debtor Payment Received | $650.00 | | | | | | | | $650.00 | 12/01/09 | 12/01/09 | | |
| 12/01/09 | Payment applied | | $649.62 | | $73.94 | $323.14 | $252.54 | | | $0.38 | | | | $61,969.15 |
| 12/29/09 | Debtor Payment Received | $650.00 | | | | | | | | $650.38 | 01/01/10 | 01/01/10 | | |
| 01/01/10 | Payment applied | | $649.62 | | $74.32 | $322.76 | $252.54 | | | $0.76 | | | | $61,894.83 |
| 01/28/10 | Debtor Payment Received | $650.00 | | | | | | | | $650.76 | 02/01/10 | 02/01/10 | | |
| 02/01/10 | Payment applied | | $649.62 | | $74.71 | $322.37 | $252.54 | | | $1.14 | | | | $61,820.12 |
| 02/26/10 | Debtor Payment Received | $650.00 | | | | | | | | $651.14 | 03/01/10 | 03/01/10 | | |
| 03/01/10 | Payment applied | | $649.62 | | $75.10 | $321.98 | $252.54 | | | $1.52 | | | | $61,745.02 |
| 03/04/10 | Debtor Payment Received | $650.00 | | | | | | | | $651.52 | 04/01/10 | 04/01/10 | | |
| 03/30/10 | Payment applied | | $649.62 | | $75.49 | $321.59 | $252.54 | | | $1.90 | | | | $61,669.53 |
| 04/01/10 | Debtor Payment Received | $650.00 | | | | | | | | $651.90 | 05/01/10 | 05/01/10 | | |
| 05/04/10 | Debtor Payment Received | $690.00 | | | | | | | | $1,341.90 | 06/01/10 | | | |
| 05/28/10 | Payment applied | | $685.56 | | $75.88 | $321.20 | $288.48 | | | $656.34 | | 05/01/10 | | $61,593.65 |
| 05/28/10 | Debtor Payment Received | $690.00 | | | | | | | | $1,346.34 | 06/01/10 | | | |
| 05/28/10 | Payment applied | | $685.56 | | $76.28 | $320.80 | $288.48 | | | $660.78 | | 06/01/10 | | $61,517.37 |
| 06/28/10 | Debtor Payment Received | $690.00 | | | | | | | | $1,350.78 | 07/01/10 | | | |
| 06/28/10 | Payment applied | | $685.56 | | $76.68 | $320.40 | $288.48 | | | $665.22 | | 07/01/10 | | $61,440.69 |
| 07/28/10 | Debtor Payment Received | $690.00 | | | | | | | | $1,355.22 | 08/01/10 | | | |
| 07/28/10 | Payment applied | | $685.56 | | $77.08 | $320.00 | $288.48 | | | $669.66 | | 8/1/2010-09/01/10 | | $61,363.61 |
| 08/06/10 | Debtor Payment Received | $690.00 | | | | | | | | $0.00 | 09/01/10 | | | |
| 09/25/10 | Debtor Payment Received | $690.00 | | | | | | | | $690.00 | 09/01/10 | | | |
| 09/28/10 | Payment applied | | $685.56 | | $77.48 | $319.60 | $288.48 | | | $4.44 | | 09/01/10 | | $61,286.13 |
| 10/01/10 | Debtor Payment Received | $690.00 | | | | | | | | $694.44 | 10/01/10 | | | |
| 10/27/10 | Payment applied | | $685.56 | | $77.88 | $319.20 | $288.48 | | | $8.86 | | 10/01/10 | | $61,208.25 |
| 11/01/10 | Debtor Payment Received | $690.00 | | | | | | | | $698.88 | 11/01/10 | | | |
| 11/29/10 | Payment applied | | $685.56 | | $78.29 | $318.79 | $288.48 | | | $13.32 | | 11/01/10 | | $61,129.96 |
| 12/01/10 | Debtor Payment Received | $690.00 | | | | | | | | $703.32 | 12/01/10 | | | |
| 12/22/10 | Payment applied | | $685.56 | | $78.69 | $318.39 | $288.48 | | | $17.76 | | 12/01/10 | | $61,051.27 |
| 01/01/11 | Debtor Payment Received | $690.00 | | | | | | | | $707.76 | 01/01/11 | | | |
| 01/28/11 | Payment applied | | $685.56 | | $79.10 | $317.98 | $288.48 | | | $22.20 | | 01/01/11 | | $60,972.17 |
| 02/01/11 | Debtor Payment Received | $690.00 | | | | | | | | $712.20 | 02/01/11 | | | |
| 02/28/11 | Payment applied | | $685.56 | | $79.52 | $317.56 | $288.48 | | | $26.64 | | 02/01/11 | | $60,892.65 |
| 03/02/11 | Debtor Payment Received | $690.00 | | | | | | | | $716.64 | 03/01/11 | | | |
| 03/30/11 | Payment applied | | $685.56 | | $79.93 | $317.15 | $288.48 | | | $31.08 | | 03/01/11 | | $60,812.72 |
| 04/01/11 | Debtor Payment Received | $651.00 | | | | | | | | $682.08 | 04/01/11 | | | |
| 04/27/11 | Payment applied | | $650.12 | | $80.35 | $316.73 | $253.04 | | | $31.96 | | 04/01/11 | | $60,732.37 |
| 05/02/11 | Debtor Payment Received | $651.00 | | | | | | | | $682.96 | 05/01/11 | | | |
| 06/01/11 | Payment applied | | $650.12 | | $80.77 | $316.31 | $253.04 | | | $32.84 | | 05/01/11 | | $60,651.50 |
| 06/01/11 | Debtor Payment Received | $651.00 | | | | | | | | $683.84 | 06/01/11 | | | |
| 06/27/11 | Payment applied | | $650.12 | | $81.19 | $315.89 | $253.04 | | | $33.72 | | 06/01/11 | | $60,570.41 |
| 07/01/11 | Debtor Payment Received | $651.00 | | | | | | | | $684.72 | 07/01/11 | | | |
| 07/26/11 | Payment applied | | $650.12 | | $81.61 | $315.47 | $253.04 | | | $34.60 | | 07/01/11 | | $60,488.80 |
| 08/01/11 | Debtor Payment Received | $651.00 | | | | | | | | $685.60 | 08/01/11 | | | |
| 08/31/11 | Payment applied | | $650.12 | | $82.03 | $315.05 | $253.04 | | | $35.48 | | 08/01/11 | | $60,406.77 |
| 09/01/11 | Debtor Payment Received | $651.00 | | | | | | | | $686.48 | 09/01/11 | | | |
| 09/27/11 | Payment applied | | $650.12 | | $82.46 | $314.62 | $253.04 | | | $36.36 | | 09/01/11 | | $60,324.31 |
| 10/01/11 | Debtor Payment Received | $651.00 | | | | | | | | $687.36 | 10/01/11 | | | |
| 11/01/11 | Payment applied | | $650.12 | | $82.89 | $314.19 | $253.04 | | | $37.24 | | 10/01/11 | | $60,241.42 |
| 11/01/11 | Debtor Payment Received | $651.00 | | | | | | | | $688.24 | 11/01/11 | | | |
| 11/29/11 | Payment applied | | $650.12 | | $83.32 | $313.76 | $253.04 | | | $38.12 | | 11/01/11 | | $60,158.10 |
| 12/01/11 | Debtor Payment Received | $651.00 | | | | | | | | $689.12 | 12/01/11 | | | |
| 12/29/11 | Payment applied | | $650.12 | | $83.76 | $313.32 | $253.04 | | | $39.00 | | 12/01/11 | | $60,074.34 |
| 01/02/12 | Payment applied | | $650.12 | | $84.19 | $312.89 | $253.04 | | | $39.00 | | 01/01/12 | | $59,990.15 |
| 01/31/12 | Debtor Payment Received | $651.00 | | | | | | | | $690.00 | 02/01/12 | 02/01/12 | | |

| Date Rec'd | Code Legend | Amount Received Reversed | Amount applied from Suspense | Trustee Payments | Principal | Interest | Escrow | Late charges | Other Fees | Suspense | Contractual PDTD | Post PDTD | Trustee Check # | Out Standing PB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/01/12 | Payment applied | | $650.12 | | $84.63 | $312.45 | $253.04 | | | $39.88 | 02/01/12 | | | $59,905.52 |
| 02/06/12 | Debtor Payment Received | $1,103.10 | | | | | | | | $1,142.98 | | | | |
| 02/29/12 | Debtor Payment Received | $651.00 | | | | | | | | $1,793.98 | | | | |
| 03/01/12 | Payment Reversal | ($1,103.10) | | | | | | | | $690.88 | | | | |
| 03/28/12 | Debtor Payment Received | $651.00 | | | | | | | | $1,341.88 | | 03/01/12 | | |
| 03/28/12 | Payment applied | | $650.12 | | $85.07 | $312.01 | $253.04 | | | $691.76 | 03/01/12 | | | $59,820.45 |
| 05/02/12 | Debtor Payment Received | $640.00 | | | | | | | | $1,331.76 | | 04/01/12 | | |
| 05/02/12 | Payment applied | | $650.12 | | $85.52 | $311.56 | $253.04 | | | $681.64 | 04/01/12 | | | $59,734.93 |
| 05/31/12 | Debtor Payment Received | $640.00 | | | | | | | | $1,321.64 | | 05/01/12 | | |
| 05/31/12 | Payment applied | | $637.10 | | $85.96 | $311.12 | $240.02 | | | $684.54 | 05/01/12 | | | $59,648.97 |
| 07/03/12 | Debtor Payment Received | $640.00 | | | | | | | | $1,324.54 | | 06/01/12 | | |
| 07/03/12 | Payment applied | | $637.10 | | $86.41 | $310.67 | $240.02 | | | $687.44 | 06/01/12 | | | $59,562.56 |
| 07/31/12 | Debtor Payment Received | $640.00 | | | | | | | | $1,327.44 | | 07/01/12 | | |
| 07/31/12 | Payment applied | | $637.10 | | $86.86 | $310.22 | $240.02 | | | $690.34 | 07/01/12 | | | $59,475.70 |
| 08/31/12 | Debtor Payment Received | $640.00 | | | | | | | | $1,330.34 | | 08/01/12 | | |
| 08/31/12 | Payment applied | | $637.10 | | $87.31 | $309.77 | $240.02 | | | $693.24 | 08/01/12 | | | $59,388.39 |
| 10/04/12 | Debtor Payment Received | $640.00 | | | | | | | | $1,333.24 | | 09/01/12 | | |
| 10/04/12 | Payment applied | | $637.10 | | $87.77 | $309.31 | $240.02 | | | $696.14 | 09/01/12 | | | $59,300.62 |
| 11/08/12 | Debtor Payment Received | $640.00 | | | | | | | | $1,336.14 | | 10/01/12 | | |
| 11/08/12 | Payment applied | | $637.10 | | $88.22 | $308.86 | $240.02 | | | $699.04 | 10/01/12 | | | $59,212.40 |
| 11/29/12 | Debtor Payment Received | $640.00 | | | | | | | | $1,339.04 | | 11/01/12 | | |
| 11/29/12 | Payment applied | | $637.10 | | $88.68 | $308.40 | $240.02 | | | $701.94 | 11/01/12 | | | $59,123.72 |
| 01/04/13 | Debtor Payment Received | $640.00 | | | | | | | | $1,341.94 | | 12/01/12 | | |
| 01/04/13 | Payment applied | | $637.10 | | $89.14 | $307.94 | $240.02 | | | $704.84 | 12/01/12 | | | $59,034.58 |
| 01/31/13 | Debtor Payment Received | $640.00 | | | | | | | | $1,344.84 | | 01/01/13 | | |
| 01/31/13 | Payment applied | | $637.10 | | $89.61 | $307.47 | $240.02 | | | $707.74 | 01/01/13 | | | $58,944.97 |
| 03/07/13 | Debtor Payment Received | $705.00 | | | | | | | | $1,412.74 | | 02/01/13 | | |
| 03/07/13 | Payment applied | | $704.09 | | $90.07 | $307.01 | $307.01 | | | $708.65 | 02/01/13 | | | $58,854.90 |
| 04/02/13 | Debtor Payment Received | $705.00 | | | | | | | | $1,413.65 | | 03/01/13 | | |
| 04/02/13 | Payment applied | | $704.09 | | $90.54 | $306.54 | $307.01 | | | $709.56 | 03/01/13 | | | $58,764.36 |
| 05/03/13 | Debtor Payment Received | $705.00 | | | | | | | | $1,414.56 | | 04/01/13 | | |
| 05/03/13 | Payment applied | | $704.09 | | $91.02 | $306.06 | $307.01 | | | $710.47 | 04/01/13 | | | $58,673.34 |
| 05/31/13 | Debtor Payment Received | $705.00 | | | | | | | | $1,415.47 | | 05/01/13 | | |
| 05/31/13 | Payment applied | | $694.89 | | $91.49 | $305.59 | $297.81 | | | $720.58 | 05/01/13 | | | $58,581.85 |
| 07/04/13 | Debtor Payment Received | $705.00 | | | | | | | | $1,425.58 | | 06/01/13 | | |
| 07/04/13 | Payment applied | | $694.89 | | $91.97 | $305.11 | $297.81 | | | $730.69 | 06/01/13 | | | $58,489.88 |
| 08/28/13 | Debtor Payment Received | $705.00 | | | | | | | | $1,435.69 | | 07/1/13 & 08/01/13 | | |
| 08/28/13 | Payment applied | | $694.89 | | $92.45 | $304.63 | $297.81 | | | $740.80 | 07/01/13 | | | $58,397.43 |
| 10/03/13 | Payment applied | | $694.89 | | $92.93 | $304.15 | $297.81 | | | $45.91 | 08/01/13 | | | $58,304.50 |
| 10/03/13 | Debtor Payment Received | $705.00 | | | | | | | | $750.91 | | 9/1/2013 | | |
| 10/31/13 | Payment applied | | $694.89 | | $93.41 | $303.67 | $297.81 | | | $56.02 | 09/01/13 | | | $58,211.09 |
| 12/31/13 | Debtor Payment Received | $705.00 | | | | | | | | $761.02 | | 10/1/2013 | | |
| 02/04/14 | Payment applied | | $694.89 | | $93.90 | $303.18 | $297.81 | | | $66.13 | 10/01/13 | | | $58,117.19 |
| 02/04/14 | Debtor Payment Received | $705.00 | | | | | | | | $771.13 | | 11/01/2013 | | |
| 02/05/14 | Payment applied | | $694.89 | | $94.39 | $302.69 | $297.81 | | | $76.24 | 11/01/13 | | | $58,022.60 |
| 03/04/14 | Debtor Payment Received | $705.00 | | | | | | | | $781.24 | | 12/01/2013 | | |
| 03/06/14 | Payment applied | | $694.89 | | $94.88 | $302.20 | $297.81 | | | $86.35 | 12/01/13 | | | $57,927.92 |

| | |
|---|---|
| Funds in post petition suspense | $86.35 |
| Funds in Pre Petition suspense | $0.00 |
| A/c is Contractual next due for | 1/1/2014 |
| A/c is post next due for | 1/1/2014 |

**Monthly payment Debtor need to pay**

| Month | Amount | PI | Escrow |
|---|---|---|---|
| 12/1/2013 | 694.89 | 397.08 | 297.81 |
| 1/1/2014 | 694.89 | 397.08 | 297.81 |
| 2/1/2014 | 694.89 | 397.08 | 297.81 |
| 3/1/2014 | 694.89 | 397.08 | 297.81 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon the following parties in interest either via pre-paid regular U.S. Mail or via electronic notification on or before the _28_ day of _March_ 2014:

Debtor's Attorney
Pamela Jean Chaney
Monte J. White & Associates P.C.
402 Cypress St. Ste. 310 American State Building
Abilene, Texas 79601-5151

Debtor
Patricia Renchler
5461 CR 206
Breckenridge, Texas 76424-7046

U.S. Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242

Chapter 13 Trustee
Walter O'Cheskey
6308 Iola Avenue
Lubbock, Texas 79424

Mark W. Harmon
Boerner, Dennis & Franklin, PLLC
P. O. Box 1738
Lubbock, Texas 79408

109-10407-RCJ-13

/s/ Sammy P. Hooda
Cristina Platon Camarata
Michael J. Burns
Sammy P. Hooda

4040-N-0630